**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
WICHITA FALLS DIVISION**

| | | |
|---|---|---|
| **PEARLIE BERNICE JONES,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 7:19-cv-00137-M-BP** |
| | § | |
| **ANDREW M. SAUL,** | § | |
| **Commissioner of Social Security,** | § | |
| | § | |
| | § | |
| **Defendant.** | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Plaintiff Pearlie Bernice Jones ("Jones") filed this action under 42 U.S.C. § 405(g), seeking judicial review of the denial by the Commissioner of Social Security ("Commissioner") of her application for supplemental security income ("SSI") under Title XVI of the Social Security Act ("SSA"). ECF No. 1. After considering the pleadings, briefs, and administrative record, the undersigned **RECOMMENDS** that Chief United States District Judge Barbara M. G. Lynn **AFFIRM** the Commissioner's decision.

## I.    STATEMENT OF THE CASE

Jones was born on August 29, 1975 and has a "high school graduate" level of education. ECF No. 16 at 5; *see* Soc. Sec. Admin. R. (hereinafter "Tr."), ECF No. 14-1 at 25. She filed an application for SSI on September 22, 2016, alleging that her disability began on September 2, 2016. Tr. 11. On the date she filed the application, she was 41 years old, which is defined as a younger individual. Tr. 24. The Commissioner initially denied her claim on December 8, 2016 and denied it again upon reconsideration on April 10, 2017. Tr. 11. Jones requested a hearing, which was held before Administrative Law Judge ("ALJ") Douglas S. Stults on June 6, 2018 in Lawton,

Oklahoma. Tr. 11, 31. The ALJ issued an unfavorable decision on January 23, 2019, finding that based on the application for SSI, Jones was not disabled. Tr. 26.

In the decision, the ALJ employed the statutory five-step analysis and established during step one that Jones had not engaged in substantial gainful activity since September 22, 2016. Tr. 13. At step two, he determined that Jones had the severe impairments of hypertension, obesity, impairment of the left knee and shoulders, and bipolar disorder. Tr. 14. He found that Jones had moderate limitations in all four "paragraph B" categories: understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. Tr. 16. At step three, the ALJ found that Jones's impairments did not meet or medically equal the severity of any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. 14. He found that Jones had the residual functional capacity ("RFC")

> to perform the full range of "light work," as defined in 20 [C.F.R. § 416.967(b)], except that the claimant can only: occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl; never climb ropes, ladders, or scaffolds; occasionally reach overhead; as to the use of . . . upper extremities beneath overhead level, frequently reach, push, and pull; understand, remember, and carry out simple instructions; make only simple work[-]related decisions; have only incidental, superficial work-related type contact with co-workers and supervisors, i.e. brief, succinct, cursory, concise communication relevant to the task being performed; cannot tolerate work traditionally defined or known as "fast pace" or "production pace" type work; cannot tolerate "teamwork" type job, i.e., that the claimant cannot work in conjunction with, or in tandem with, one or more co-workers on the very same job task or duty; and cannot tolerate strict production or performance quotas (wherein the employer must produce 1/16th of the day's work every half-hour), but can vary the pace of work over the course of the workday (able to speed up and slow down as the employee chooses), albeit that all assigned work is completed by the end of the workday or workweek, whichever is applicable.

Tr. 17. At step four, the ALJ found that transferability of job skills was not an issue because Jones does not have past relevant work. Tr. 25. At step five, the ALJ found that jobs that Jones could perform existed in significant numbers in the national economy, so a finding of "not disabled" was appropriate. Tr. 26.

The Appeals Council denied review on October 11, 2019. Tr. 1. Therefore, the ALJ's decision is the Commissioner's final decision and is properly before the Court for review. *Higginbotham v. Barnhart*, 405 F.3d 332, 334 (5th Cir. 2005) ("[T]he Commissioner's 'final decision' includes the Appeals Council's denial of [a claimant's] request for review.").

## II.    STANDARD OF REVIEW

Title II, 42 U.S.C. § 404 *et seq.*, of the SSA governs the disability insurance program in addition to numerous regulations concerning disability insurance. *See* 20 C.F.R. § 404 (2020). The SSA defines a disability as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A) (2020); *Crowley v. Apfel*, 197 F.3d 194, 197 (5th Cir. 1999).

To determine whether a claimant is disabled and thus entitled to disability benefits, the Commissioner employs a sequential five-step analysis. 20 C.F.R. § 404.1520. First, the claimant must not be engaged in any substantial gainful activity. *Id.* § 404.1520(a)(4)(i). "'Substantial gainful activity' is work activity involving significant physical or mental abilities for pay or profit." *Masterson v. Barnhart*, 309 F.3d 267, 271 n.2 (5th Cir. 2002) (citing 20 C.F.R. § 404.1572(a)–(b)). Second, the claimant must have an impairment or combination of impairments that is severe. 20 C.F.R. § 404.1520(a)(4)(ii); *see Stone v. Heckler*, 752 F.2d 1099, 1100–03 (5th Cir. 1985). Third, disability exists if the impairment or combination of impairments meets or equals an impairment listed in the Listing of Impairments ("Listing"), 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(a)(4)(iii). Fourth, the impairments must prevent the claimant from returning to past relevant work. *Id.* § 404.1520(a)(4)(iv). Before this step, the ALJ assesses

3

the claimant's RFC, which is "the most [a claimant] can still do despite [the claimant's] limitations." *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005); 20 C.F.R. § 416.945(a)(1). Fifth, impairments must prevent the claimant from doing any work after considering the claimant's RFC, age, education, and work experience. *Crowley*, 197 F.3d at 197–98; 20 C.F.R. § 404.1520(a)(4)(v).

"A finding that a claimant is disabled or is not disabled at any point in the five-step review is conclusive and terminates the analysis." *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987). "The claimant bears the burden of showing [he or] she is disabled through the first four steps of the analysis; on the fifth, the Commissioner must show that there is other substantial work in the national economy that the claimant can perform." *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007).

The Court reviews the Commissioner's decision to determine whether the Commissioner applied the correct legal standards and whether substantial evidence in the record as a whole supports the decision. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995); *Hollis v. Bowen*, 837 F.2d 1378, 1382 (5th Cir. 1988). "Substantial evidence is such relevant evidence as a responsible mind might accept to support a conclusion. It is more than a mere scintilla and less than a preponderance. A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision." *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000) (internal quotation marks omitted) (quoting *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995)). The Court may neither reweigh the evidence in the record nor substitute its judgment for the Commissioner's, but it will carefully scrutinize the record to determine if substantial evidence is present. *Id.*; *Hollis*, 837 F.2d at 1383. "Conflicts in the evidence are for the Commissioner and

not the courts to resolve." *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000) (internal punctuation omitted) (quoting *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990)).

### III.    ANALYSIS

Jones raises two issues on appeal. She claims that the ALJ erred by (1) improperly evaluating her RFC and (2) failing to make a finding about whether Jones could maintain employment. ECF No. 16 at 12, 20.

### A.    The ALJ properly evaluated Jones's RFC.

Jones argues that the ALJ erred by selectively considering the evidence. ECF No. 16 at 16–17. She further argues that the ALJ did not consider Jones's reasons for noncompliance with her treatment, violating SSR 16-3p. *Id.* at 18–19. In response, the Commissioner argues that substantial evidence supports the RFC determination, and Jones can carry out simple instructions, as shown by her ability to heed reminders to take her medication. ECF No. 17 at 3–4. He also asserts that Jones's medication reasonably controls her impairments, and she has not demonstrated that the finding that she cannot participate in teamwork fails to account for her negative interactions with others. *See id.* at 4–5. The Commissioner contends that the ALJ's denial of benefits to Jones was not solely based on her noncompliance with her treatment. *Id.* at 5–6.

By definition, a claimant's RFC is the most the claimant can still do despite the claimant's impairments and any related symptoms. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1) (2020). The ALJ is not required to expressly state in the RFC the limitations on which it is based. *Cornejo v. Colvin*, No. EP-11-CV-470-RFC, 2013 WL 2539710, at *9 (W.D. Tex. June 7, 2013) (citing *Bordelon v. Astrue*, 281 F. App'x 418, 422–23 (5th Cir. 2008) (per curiam)). "The RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions in paragraphs (b), (c), and (d) of 20 C.F.R. [§§] 404.1545 and 416.945." SSR 96–8p, 1996 WL 374184, at *1 (July 2, 1996).

The functions in paragraphs (b), (c), and (d) relate to physical, mental, and other abilities. The ALJ considers the nature and extent of the claimant's physical, mental, and other relevant limitations. 20 C.F.R. § 404.1545.

In determining a claimant's physical limitations, the ALJ considers evidence of the claimant's abilities to sit, stand, walk, lift, carry, push, pull, and perform other physical functions. *Id.* § 404.1545(b). In determining the claimant's mental limitations, the ALJ considers evidence of the claimant's abilities to understand, remember, and carry out instructions, as well as respond appropriately to supervision, co-workers, and work pressures in a work setting. *Id.* § 404.1545(c). The ALJ uses what is known as the "paragraph B criteria" to rate the degree of the claimant's mental limitations in four areas: understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. *Id.* § 404.1520a; *see id.* Part 404, Subpart P, Appendix 1. Finally, the ALJ considers limitations and restrictions that affect other work-related abilities. 20 C.F.R. § 404.1545(d). As will be shown below, the ALJ properly considered all of Jones's functional limitations.

Jones asserts that when the ALJ determined that she can carry out simple instructions, he did not account for her need for reminders to take her medication. ECF No. 16 at 13. Jones contends that her need for reminders means that she cannot follow simple instructions. *Id.* Jones's argument is not persuasive. A finding that a claimant can follow simple instructions adequately incorporates a need for reminders to take medication. *Linda Michelle M. v. Saul*, No. 3:19-CV-00328-B-BT, 2019 WL 7762203, at *6 (N.D. Tex. Dec. 27, 2019), *rec. adopted*, 2020 WL 470279 (N.D. Tex. Jan. 28, 2020) (noting that an RFC limiting a claimant to understanding, remembering, and carrying out simple instructions was consistent with the claimant's need for reminders to take medication).

Jones has not shown a lack of credible evidentiary choices or medical findings that support the ALJ's RFC finding. Although Jones argues that other evidence in the record supports her assertion that she is not capable of the basic mental demands of competitive unskilled work, her "burden is not to highlight evidence contrary to the ALJ's ruling, but to show that there is no substantial evidence supporting the ALJ's decision." *Caldwell v. Colvin*, No. 4:15-CV-00576-O-BL, 2016 WL 3621097, at *3 (N.D. Tex. June 10, 2016), *rec. adopted,* No. 4:15-CV-00576-O, 2016 WL 3523780 (N.D. Tex. June 28, 2016); *see, e.g.*, ECF No. 16 at 14–18. Jones's disagreement with the ALJ's RFC finding does not carry her burden of establishing that no substantial evidence supports the ALJ's determination. As a result, reversal of the ALJ's opinion is not required on this point.

Jones also argues that the ALJ did not properly consider the reasons that she may not comply with her bipolar medication. ECF No. 16 at 18. At step four, the ALJ considers the claimant's RFC, which involves assessing the claimant's allegations of symptoms. Pursuant to SSR 16-3p, an ALJ must conduct an objective-subjective, two-step analysis to make this assessment. *Salgado v. Astrue*, 271 F. App'x 456, 458 (5th Cir. 2008) (per curiam); SSR 16-3p, 2017 WL 5180304, at *2–3. In the first, objective step, the ALJ must determine whether an impairment exists that could reasonably be expected to produce the claimant's symptoms. *Salgado*, 271 F. App'x at 458–59. Here, the ALJ found that many impairments existed that could reasonably be expected to produce Jones's symptoms. Tr. 14, 19.

If the ALJ identifies an impairment at step one, the ALJ proceeds to the second, subjective step and "considers the applicant's statements about symptoms and the remaining evidence in the record to determine the strength of the symptoms and how the symptoms affect the applicant's ability to do basic work." *Salgado*, 271 F. App'x at 458–59. This requires a credibility finding

7

regarding the applicant's claims about symptoms. *Id.* "A claimant's non-compliance with treatment is a proper factor for the ALJ to consider in assessing credibility." *Robinson v. Astrue*, No. H-09-2497, 2010 WL 2606325, at *8 (S.D. Tex. June 28, 2010) (citation omitted).

If a claimant fails to follow her prescribed treatment without good reason, the Social Security Administration will not find her disabled. 20 C.F.R. § 416.930(b). In order to find that a claimant failed to follow prescribed treatment, four conditions must be present:

> 1. The evidence establishes that the individual's impairment precludes engaging in any substantial gainful activity (SGA) or, in the case of a disabled widow(er) that the impairment meets or equals the Listing of Impairments in Appendix 1 of Regulations No. 4, Subpart P; and
> 2. The impairment has lasted or is expected to last for 12 continuous months from onset of disability or is expected to result in death; and
> 3. Treatment which is clearly expected to restore capacity to engage in any SGA (or gainful activity, as appropriate) has been prescribed by a treating source; and
> 4. The evidence of record discloses that there has been refusal to follow prescribed treatment.
> Where SSA makes a determination of "failure," a determination must also be made as to whether or not failure to follow prescribed treatment is justifiable.

SSR 82-59, 1982 WL 31384. Jones has not shown that these four conditions have been met. She does not point to evidence that sufficiently establishes that her impairment precludes engaging in SGA or is expected to either last for twelve continuous months or result in death. *See* ECF No. 16. Further, because she has not shown that she cannot engage in SGA, she cannot show that a treating source prescribed treatment that was clearly expected to restore capacity to engage in SGA or that she refused to follow that prescribed treatment. Because the four conditions have not been met, the ALJ was not required to discuss whether Jones's failure to follow prescribed treatment was justifiable.

  **B.**  **The ALJ did not err by not determining whether Jones can maintain employment.**

Jones argues that because her bipolar disorder waxes and wanes, the ALJ erred by not making a finding regarding whether she could maintain employment. ECF No. 16 at 20. She

alleges that she cannot maintain employment for more than a limited time because of her bipolar disorder. *Id.* at 20–22. She argues that "a determination that a person is capable of engaging in substantial gainful activity" depends on a finding that the person "has a reasonable chance, 'once hired, of keeping the job.'" *Id.* at 21 (citing *Watson v. Barnhart*, 288 F.3d 212, 217 (5th Cir. 2002)). She asserts that her anger has caused her to lose every job she has had. *Id.* (citing Tr. 45).

In response, the Commissioner asserts that Jones does not show that her bipolar disorder prevents her from maintaining the jobs that the ALJ determined she can perform. *See* ECF No. 17 at 6. He argues that the ALJ is required to make a finding about a claimant's ability to maintain employment only when "the claimant's physical ailment waxes and wanes in its manifestation of disabling symptoms." *See id.* (quoting *Frank v. Barnhart*, 326 F.3d 618, 619 (5th Cir. 2003)).

"A finding that a claimant is able to engage in substantial gainful activity requires more than a simple determination that the claimant can find employment and that he can physically perform certain jobs; it also requires a determination that the claimant can hold whatever job he finds for a significant period of time." *Watson*, 288 F.3d at 217 (internal punctuation and quotation marks omitted) (citation omitted). Nevertheless, the ALJ is not required to make a "finding regarding the claimant's ability to maintain employment in every case." *Heck v. Colvin*, 674 F. App'x 411, 416 (5th Cir. 2017) (citation and internal quotation marks omitted). A separate finding on a claimant's ability to maintain work is only required when the claimant's ailment "waxes and wanes in its manifestation of disabling symptoms." *Crainey v. Astrue*, No. 4:11-CV-613-A, 2012 WL 5846406, at *6 (N.D. Tex. Nov. 1, 2012), *rec. adopted*, 2012 WL 5860324 (N.D. Tex. Nov. 19, 2012). Further, "in order to support a finding of disability, the claimant's intermittently recurring symptoms must be of sufficient frequency or severity to prevent the claimant from holding a job for a significant period of time." *Johnson v. Colvin*, No. 3:14-CV-04213-G, 2016

WL 791291, at *4 (N.D. Tex. Feb. 8, 2016), *rec. adopted*, No. 3:14-CV-4213-G (BK), 2016 WL 775675 (N.D. Tex. Feb. 29, 2016) (quoting *Frank v. Barnhart*, 326 F.3d 618, 619 (5th Cir. 2003)) (internal quotation marks omitted).

"Inherent in the definition of RFC is the understanding that the claimant has an ability to work on a sustained basis." *Id.* (citing *Dunbar v. Barnhart,* 330 F.3d 670, 671 (5th Cir. 2003)). Unless the claimant's ailment waxes and wanes, the RFC finding encompasses a determination that the claimant can maintain work. *Id.* Evidence that a claimant's symptoms wax and wane could include, for example, a claimant's statements that "her degenerative disc disease prevented her from maintaining employment because every number of weeks she lost movement in her legs." *Id.* (quoting *Frank*, 326 F.3d at 619) (internal quotation marks omitted). Conversely, a claimant's testimony that her back pain caused her to have good days and bad days would not be sufficient to show waxing and waning symptoms. *Id.*

Jones asserts that the ALJ should have made a finding about whether she can maintain employment because "[b]ipolar disorder is a recurrent and chronic disease that has wax and wane in the long-term course." ECF No. 16 at 19. But "numerous courts have required something more than a mere diagnosis of bipolar disorder to determine that the impairment waxes and wanes in its manifestation of disabling symptoms such that a separate finding regarding the claimant's ability to maintain work is required." *Crainey*, 2012 WL 5846406, at *7. Jones's generalized argument regarding the nature of bipolar disorder is insufficient to show that her bipolar symptoms wax and wane such that the ALJ erred in not making a specific finding.

Here, Jones contends that she "could become verbally abusive and physically violent," "had been in prison twice," and "had been charged with assault thirty to forty times." ECF No. 16 at 21. She asserts that she "had severe problems with job relations[,] . . . anger control[,] and social

functioning." *Id.* She describes instances of mood swings, severe anxiety, depressed mood, elevated mood, difficulty with social functioning, and irritability. *Id.* at 16–17. She does not show, however, that her disabling symptoms waxed and waned in such a way that would prevent her from holding a job for a significant period of time. The ALJ analyzed her symptoms and concluded that she could, among other abilities, understand, remember, and carry out simple instructions; make simple work-related decisions; and have incidental, superficial work-related contact with co-workers and supervisors. Tr. 17. The ALJ considered the evidence in the record as a whole and determined that Jones is capable of maintaining employment. Accordingly, the ALJ was not required to make a separate finding that Jones could maintain a job for a significant period. The ALJ's RFC determination encompassed the necessary finding, and the ALJ did not err as to this issue.

## IV.    CONCLUSION

Because the ALJ employed the correct legal standards, substantial evidence in the record supports his decision, and Jones has not shown that reversal of the decision is required, the undersigned **RECOMMENDS** that Chief Judge Lynn **AFFIRM** the Commissioner's decision.

A copy of this Findings, Conclusions, and Recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this Findings, Conclusions, and Recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1)(B) and Fed. R. Civ. P. 72(b)(1). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.

Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc).

Signed on July 21, 2020.

Hal R. Ray, Jr.
UNITED STATES MAGISTRATE JUDGE

12